IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CLAIRE MURPHY, as Personal Representative
of the Estate of Bradley Peterson, Deceased,**
       Plaintiff,

vs.                                                                                 No. 12 CV 943 JAP/KBM

**RALPH TRUJILLO,
KIMBERLY SOLESBEE a/k/a
KIMBERLY SOLESHEE,
JO LOFTIS
GOVERNMENTAL EMPLOYEES
INSURANCE COMPANY d/b/a GEICO,
STATE FARM MUTUAL AUOTMOBILE
INSURANCE COMPANY, and STATE
FARM FIRE AND CASUALTY COMPANY
d/b/a STATE FARM,**
       Defendants.

## MEMORANDUM OPINION AND ORDER

On September 7, 2012, Plaintiff, Claire Murphy, filed a complaint in this Court as the court-appointed Personal Representative of the Estate of Bradley Peterson. *See* COMPLAINT FOR NEGLIGENCE, WRONGFUL DEATH, UNFAIR TRADE PRACTICES, UNFAIR INSURANCE PRACTICES, BAD FAITH AND PUNITIVE DAMAGES (Doc. No. 1) (Complaint). Because nothing in the Complaint or in the record supports a finding that this Court has subject-matter jurisdiction over the case, the Court will dismiss Plaintiff's Complaint without prejudice.

## BACKGROUND

### A.  Plaintiff's Complaint

According to the Complaint, on March 3, 2012, Defendant Ralph Trujillo was driving a vehicle owned by Defendant Kimberly Solesbee when he collided with a vehicle driven by

1

Defendant Jo Loftis. At the time of the accident, Bradley Peterson was a passenger in Defendant Loftis's vehicle. *Id.* at 2. Mr. Peterson was severely injured in the crash and ultimately died from his injuries. *Id.* In this lawsuit, Plaintiff, Claire Murphy, the surviving daughter of Mr. Peterson, seeks damages in an amount "sufficient to compensate the Estate of Bradley Peterson for all injuries and damages suffered" as a result of the car accident. *Id.* at 5.

Plaintiff asserts that the Court has diversity jurisdiction over the lawsuit under 28 U.S.C. § 1332. *See* Civil Cover Sheet, Exhibit 1 to Complaint (Doc. No. 1-1). Plaintiff alleges the following facts to support diversity jurisdiction: 1) Defendant Solesbee, Defendant Trujillo, and Defendant Loftis are residents of New Mexico, 2) Defendants Governmental Employees Insurance Company, State Farm Mutual Automobile Insurance Company, and State Farm Fire and Casualty Company are not residents of New Mexico, 3) Plaintiff Murphy is a resident of South Carolina, and 4) the amount in controversy exceeds $75,000. Complaint at 1-2. The Complaint does not list the residence of the decedent, Mr. Peterson, or otherwise allege facts that could support a finding that Mr. Peterson is or is not a citizen of New Mexico.

### B. February Correspondence

In February 2014, after becoming concerned that the Court lacked subject-matter jurisdiction, the Court informally attempted to ascertain the domicile of Mr. Peterson by sending Plaintiff's counsel, James Lyle, three letters inquiring about Mr. Peterson's residence and activities in New Mexico.[1] The Court's first two letters to Mr. Lyle asked for general information about Mr. Peterson's domicile. (Exhibits A-1 & A-3). In response to these letters, Mr. Lyle indicated that Mr. Peterson had moved to New Mexico in the summer of 2011 when he was assigned to head the Nuclear Weapons Transportation Group at Kirtland Air Force Base. At the

---

[1] These letters and Mr. Lyle's responses are attached to this MEMORANDUM OPINION AND ORDER as Exhibits A-1 through A-6.

time of his death, Mr. Peterson was residing in New Mexico. (Exhibit A-4). However, Mr. Lyle stated that Mr. Peterson continued to own property in Maryland, his prior state of residence, and had listed his Maryland address as his primary residence on the tax returns in Mr. Lyle's possession. (Exhibit A-4). According to Mr. Lyle, Mr. Peterson's "last state tax return was filed partially in Maryland and partially in New Mexico." (Exhibit A-2).

To clarify matters, the Court sent Mr. Lyle a third letter with four questions: (1) in what state did Mr. Peterson last register to vote, (2) did Mr. Peterson have a New Mexico driver's license, (3) did Mr. Peterson register a vehicle in New Mexico, and (4) did Mr. Peterson acquire automobile insurance in New Mexico. (Exhibit A-5). On February 18, 2014, Mr. Lyle responded by emphasizing Mr. Peterson's connections with Maryland. (Exhibit A-6). First, Mr. Lyle stated that Mr. Peterson "was a registered voter in the State of Maryland." He then reiterated that Mr. Peterson had filed a 2011 "Maryland State Resident return." While Mr. Lyle admitted that Mr. Peterson registered "one of his vehicles" in New Mexico, he concluded by stating that his automobile insurance policy was "listed under his Maryland address." Mr. Peterson did not explain whether this automobile policy was a New Mexico policy and he made no response to the question about Mr. Peterson's driver's license. Based on this information, Mr. Lyle asserted that "it appears Mr. Peterson was, according to official documents, more a resident of Maryland than New Mexico at the time of his death." (Exhibit A-6).

### C. Order to Show Cause

On February 21, 2014, the Court ordered Plaintiff to file a written brief supported by admissible evidence showing cause why the Complaint should not be dismissed for lack of subject-matter jurisdiction. *See* ORDER TO SHOW CAUSE (Doc. No. 54) at 3. The ORDER TO SHOW CAUSE listed 12 questions, directed at ascertaining the domicile of Mr. Peterson on

the date of his death. On February 27, 2014, Mr. Lyle filed a response on behalf of the Plaintiff. *See* PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE (Doc. No. 55) (Response). The response provides a brief answer to each of the Court's questions. Some of these answers are evasive, or at best unclear. For example, one of the questions posed to Plaintiff was whether Mr. Peterson had a New Mexico driver's license. According to Mr. Lyle's response, "[w]hen her father's wallet was returned to Plaintiff there was no New Mexico driver's license, and Plaintiff never found a NM license in any of his personal belongings." *Id.* at 1.

Another question in the ORDER TO SHOW CAUSE asked whether Mr. Peterson's estate filed 2012 tax returns and whether these returns were filed in Maryland. This question was intended to ascertain whether Mr. Peterson's estate filed a 2012 Maryland State personal income tax return on Mr. Peterson's behalf. Due perhaps to an ambiguity in the question's wording, Mr. Lyle responded that the "only 2012 estate tax returns have not yet been filed, but will be filed in Florida." *Id.* at 2. It appears, although it is not entirely clear, that Mr. Lyle is referring to the estate tax returns not Mr. Peterson's personal income tax returns. However, in response to the next question, which asked "[i]f Mr. Peterson's estate filed a 2012 New Mexico return, did this return indicate that Mr. Peterson was a non-resident or a first-year resident," Mr. Lyle explained that the "estate filed a New Mexico return which listed Mr. Peterson as a part year resident." *Id.*

Other pertinent information contained in the response may be summarized as follows: (1) Mr. Peterson did not register to vote in New Mexico, (2) Mr. Peterson worked as a civilian for the U.S. Nuclear Weapons Transportation Group in Albuquerque, (3) his job did not have a definite end date, (3) Mr. Peterson filed a 2011 New Mexico tax return as a first-year resident, (4) Mr. Peterson continued to own a home in Maryland, which remained at least partially furnished, (5) Mr. Peterson made two trips to Maryland after moving to New Mexico, (6) Mr.

Peterson opened a bank account in New Mexico, (7) Mr. Peterson had mail forwarded to him in New Mexico, although his family continued to collect some of his mail at his Maryland address, (8) Mr. Peterson registered his one and only vehicle in New Mexico and obtained New Mexico automobile insurance for this vehicle. *See generally id.*

Mr. Lyle did not support any of the above facts with admissible evidence as requested. He did not attach copies of Mr. Peterson's income tax returns to the response; he did not attach a copy of Mr. Peterson's automobile insurance policy; he did not attach a copy of Mr. Peterson's vehicle registration. Furthermore, although Mr. Lyle attributes much of the information in the response to the Plaintiff's knowledge or belief, Mr. Lyle did not obtain an affidavit from the Plaintiff on which the Court may rely.

### D. The March Letter and Response

On March 3, 2014, the Court sent Mr. Lyle a final letter, presenting Plaintiff another opportunity to avoid dismissal of the case for lack of subject-matter jurisdiction.[2] In this letter, the Court asked Plaintiff to "contact the New Mexico Motor Vehicle Division and inquire whether Mr. Peterson had a valid New Mexico's driver's license." (Exhibit B). To avoid any confusion, the necessary New Mexico Motor Vehicle Division (NM DMV) Confidential Records Release Form was enclosed with the letter, which asked Mr. Lyle to forward a copy of the NM DMV's response to the Court. As the letter stated, the NM DMV indicated it would take between seven and ten days to receive a response. (Exhibit B).

On March 10, 2014, Mr. Lyle faxed a letter to the Court which stated:

> REMARKS: In response to the Court's most recent request, we have obtained the attached documents from the New Mexico Department of Motor Vehicles which indicates Mr. Peterson is not listed as having received a New Mexico driver's license. Please let me know if the Court needs any more information at this time.

---

[2] This letter is attached to this MEMORANDUM OPINION AND ORDER as Exhibit B.

Attached to Mr. Lyle's letter were three pages, with a small portion of text at the top of each page. Mr. Lyle's letter and these pages are attached to this MEMORANDUM OPINION AND ORDER as Exhibit C-1 and Exhibit C-2. The penultimate line of the second page states "FAILURE CODE 1: NO DRIVER RECORD FOUND FOR THE GIVEN DRIVERS LICENSE NUMBER . ." The third and fourth lines of the third page read: "NEW MEXICO HOT FILES . . . NO MATCH ON INQUIRY." (Exhibit C-2). Unable to decipher these documents, a law clerk called the NM DMV at 888-683-4636[3] and spoke with representatives in the Records Department. During these calls, the law clerk faxed the three pages provided by Mr. Lyle to the NM DMV so that a representative could explain each document. However, after reviewing the documents, a NM DMV representative said that these documents did not come from the NM DMV. The representative specifically stated that he had never heard of "New Mexico Hot Files," and that this is not a system used by the NM DMV.

## DISCUSSION

Federal courts are courts of limited jurisdiction; as a result, in every federal case, there is a presumption against jurisdiction, which must be overcome by the party invoking jurisdiction. *Martinez v. Martinez*, 62 F. App'x 309, 313 (10th Cir. 2003) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)) (unpublished). In other words, if a plaintiff files suit in federal court, the burden of proof concerning jurisdiction is on the plaintiff. In such a case, jurisdictional allegations must be pleaded affirmatively and with precision. *Id.* at 313-314. A district court judge has "an independent obligation to determine whether subject-matter jurisdiction exists," even if the defendant does not raise the issue. *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*,

---

[3] The phone number for the NM DMV can be found at the NM DMV website: http://www.mvd.newmexico.gov/contact-us.aspx.

546 U.S. 500 (2006)). This obligation persists throughout the lawsuit and a court may sua sponte raise the question of subject matter jurisdiction at any stage in the litigation. *Id.*

Here, Plaintiff asserts that the Court has diversity jurisdiction over the lawsuit under 28 U.S.C. § 1332. Title 28 U.S.C. § 1332 confers jurisdiction in the district court over an action where (1) there is complete diversity between the parties and (2) the amount in controversy is greater than $75,000. In general, complete diversity exists if the plaintiff is not a citizen of the same state as any of the defendants. However, Congress has directed that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). A plaintiff is a "legal representative" for the purposes of § 1332(c)(2) if the plaintiff's role within the lawsuit is limited to representing the estate of the decedent. *See Tank v. Chronister*, 160 F.3d 597, 599 (10th Cir. 1998) ("By its plain terms, § 1332(c)(2) . . . excludes from its coverage those who are not representing the estate of a decedent."). A "person given by statute a right to bring an action in his own name because of a decedent's death by reason of his relationship to the decedent" is not a legal representative under § 1332(c)(2). *Id.* (quoting American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts at 118 (1968)).

In March 2007, the Honorable William P. Johnson addressed the question of whether a plaintiff who brings suit under the New Mexico Wrongful Death Act (NMWDA), N.M. Stat. Ann. § 41-2-1 et seq, is a legal representative within the meaning § 1332(c)(2). *See Brown v. Mahdi*, 482 F. Supp. 2d 1300 (D.N.M. 2007). In considering the question, Judge Johnson explained that the NMWDA requires a wrongful death action to be brought by and in the name of a personal representative of the decedent. Under the NMWDA, a personal representative acts as a nominal party and may be an estate administrator, an executor, or a court-appointed personal

7

representative. *Id.* at 1304 (citing *Chavez v. Regents of Univ. of New Mexico*, 103 N.M. 606, 609 (1985)). When there are no heirs, the personal representative acts as the trustee for the estate and the creditors of the estate. *Id.* (citing *Stang v. Hertz Corp.*, 81 N.M. 348, 350 (1970)). In other words, a personal representative authorized to bring suit under the NMWDA need not be related to the decedent. For these reasons, Judge Johnson concluded that "a personal representative under the NMWDA constitutes a 'legal representative of the estate' within the meaning of § 1332(c)(2)."

In October 2007, while sitting by designation, the Honorable Paul Kelly, Jr. adopted Judge Johnson's reasoning and held that § 1332(c)(2) applies to a personal representative under the New Mexico wrongful death statute. *Biedscheid v. Daimler Chrysler Motor Company L.L.C.*, No. 07cv686 PK/RHS, slip op. at 3 (D.N.M. October 3, 2007) (unpublished). This Court agrees. Because Plaintiff is acting as the personal representative of Mr. Peterson's estate under the NMWDA, she is deemed a citizen of the state where Mr. Peterson was a citizen at the time of his death. Unfortunately, there is no definitive information in the Complaint, or in the record, concerning Mr. Peterson's domicile; Mr. Peterson may be domiciled in New Mexico as are the individual Defendants or Mr. Peterson may be domiciled in one of the unidentified states where the insurance company Defendants are citizens. In either case, the Court would clearly lack subject-matter jurisdiction. Plaintiff has failed to make an affirmative showing that complete diversity exists; thus, the Court must dismiss the Complaint.

The Court is aware that defective jurisdictional allegations may be amended at any stage in the case under 28 U.S.C. § 1653. However, § 1653 is not a free-pass, which automatically permits a plaintiff to amend the complaint to cure defects in the jurisdictional facts. *Martinez*, 62 F. App'x at 313 (holding that a plaintiff was not entitled to amend the complaint on appeal under

§ 1653 because the "plaintiff [had] provided the district court with no evidence in support of her argument, leaving only general and conclusory allegations of jurisdiction."). In *Penteco Corp. Ltd. Partnership-1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519 (10th Cir. 1991), the Tenth Circuit explained the proper procedure for a district court to follow when a potential jurisdictional defect is identified after a final judgment is entered: first, the court should resolve any relevant evidentiary disputes; then, the court should ascertain the citizenship of each party and decide whether diversity jurisdiction exists; finally, if appropriate, the court should allow the plaintiff to amend the complaint to reflect or preserve diversity. *Id.* at 1523.

The Court has provided Plaintiff numerous opportunities, both formally and informally, to provide admissible information supporting diversity jurisdiction. Despite being ordered to "file a written brief supported by admissible evidence to show cause why the Complaint should not be dismissed for lack of subject-matter jurisdiction," Plaintiff has not produced any admissible evidence concerning Mr. Peterson's domicile. In addition, the Court's February 13, 2014 letter informed Plaintiff's counsel that the Court was "concerned about jurisdiction." (Exhibit A-5). Nonetheless, Plaintiff has not moved to amend the Complaint so as to correct the jurisdictional defects outlined in the ORDER TO SHOW CAUSE. To the contrary, Plaintiff's counsel, Mr. Lyle, has avoided answering the Court's questions about Mr. Peterson's driver's license and has, instead, presented the Court with misleading and unhelpful information about his efforts to obtain information from the NM DMV. Given this state of affairs, there is no basis to find that amendment of the Complaint is warranted.

To reiterate, it is well-settled that the burden of proof regarding federal jurisdiction is on the plaintiff, when, as is the case here, the plaintiff files suit in federal court. *Craig v. Ont. Corp.*, 543 F.3d 872, 876 (7th Cir. 2008) ("Where jurisdiction is in question, the party asserting a right

to a federal forum has the burden of proof, regardless of who raises the jurisdictional challenge . . .."); *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) ("It is also hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction."); *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983) ("Where a plaintiff's claim of diversity is challenged, plaintiff has the burden of proof."). Plaintiff has not produced any admissible evidence regarding jurisdiction and has, therefore, failed to satisfy her burden of proof.

However, even if the Court were to treat counsel's argument as evidence, the Court would not be inclined to allow the case to proceed. The facts, as stated by Mr. Lyle, suggest that there is a strong possibility Mr. Peterson was a citizen of New Mexico at the time of his death. "For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a)(1), state citizenship is the equivalent of domicile." *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir.1983). Two elements are essential to establishing a new domicile: (1) residence in a new state (2) with the intent to remain there indefinitely. *Id.* Significantly, a "floating intention to return to a former domicile does not prevent the acquisition of a new domicile." *Id.* In determining domicile, courts consider factors such as "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). While residency alone is not determinative of domicile, in the absence of other factors, "the place of residence is prima facie the domicile." *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

According to Mr. Lyle, Mr. Peterson moved to New Mexico in the summer of 2011, at least seven months before his death. Between the summer of 2011 and March 2012, Mr. Peterson worked for the U.S. Nuclear Weapons Transportation Group in Albuquerque, New Mexico, a job which he planned on retaining for the indefinite future. Upon moving to New Mexico, Mr. Peterson opened a bank account in New Mexico and transferred many of his personal belongings with him. He registered his one and only vehicle in New Mexico and obtained New Mexico automobile insurance. Finally, Mr. Peterson filed a 2011 New Mexico tax return on which he indicated that he was a first-year resident. According to the 2011 New Mexico filing instructions, "[y]ou are a first-year resident if you moved to New Mexico during the tax year with the intent of making New Mexico your permanent place of residence."[4]

In contending that Mr. Peterson clearly considered himself a Maryland resident, Mr. Lyle focuses on Mr. Peterson's failure to register to vote in New Mexico, his maintenance of his Maryland home, and his continued use of his Maryland address on his automobile insurance policy and his tax returns. If true, these facts show that Mr. Peterson had not completely severed ties with Maryland prior to his death, and, therefore, undercut, to some extent, a finding that Mr. Peterson intended to remain in New Mexico indefinitely. However, these facts do not outweigh the facts discussed above, facts which show that Mr. Peterson took affirmative steps to establish a permanent home in New Mexico. Furthermore, the facts Plaintiff emphasizes are also consistent with a finding that while Mr. Peterson came to New Mexico with the intent to remain here indefinitely, he was still in the process of wrapping up his move at the time of his death.

---

[4] The 2011 New Mexico Personal Income Tax (PIT) Form Packet is attached to this MEMORANDUM OPINION AND ORDER as Exhibit D. This packet can be downloaded from the Forms and Publications section of the New Mexico Taxation and Revenue Department website at: http://www.tax.newmexico.gov/forms-publications.aspx. The definition of a first-year resident is found on Page 7 of the packet, which is labeled as Page 2 of the General Information section.

Mr. Lyle attempts to cast doubt on the natural conclusion that Mr. Peterson changed his domicile when he moved to New Mexico for a permanent job by characterizing his employment as "subject to reassignment at any time." Response at 5. In other words, Mr. Peterson was an at-will employee. Plaintiff does not claim that Mr. Peterson's job had a reasonably foreseeable end date, at which time Mr. Peterson planned to return to Maryland. Consequently, the Court can at most speculate that Mr. Peterson may have had a general desire to return to Maryland at some undetermined point in time. This type of "floating intent" to return is insufficient to destroy the creation of a new domicile, even if the individual has roots in the state to which he or she intends to return. *See Leavitt v. Scott*, 338 F.2d 749, 751 (10th Cir. 1964) (holding that a family changed its domicile when the family moved from Utah to Colorado with the present intent of remaining in Colorado, although the family had roots in Utah and "entertained the hope that they could one day return to their home in Moab").

To conclude, if the Court were forced to make a jurisdictional determination based on Mr. Lyle's recitation of the facts, the Court would find that that Mr. Peterson was domiciled in New Mexico at the time of his death.[5] This finding would destroy complete diversity and necessitate dismissal of the case.

IT IS THEREFORE ORDERED that Plaintiff's Complaint will be dismissed without prejudice in a separate order of dismissal.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] In drawing this conclusion, the Court disregards Mr. Lyle's unsubstantiated claim that Mr. Peterson did not have a New Mexico driver's license. As previously discussed, the NM DMV denies that is it the source of the documents Mr. Lyle relies on in making this claim.